UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-22748-CMA

ERIC RIVERA,

      Petitioner,

v.

SECRETARY, DEPARTMENT
OF CORRECTIONS, STATE OF
FLORIDA,

      Respondent.

**REPORT AND RECOMMENDATION**
**ON PETITION FOR WRIT OF HABEAS CORPUS**

Eric Rivera ("Petitioner") has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, challenging the constitutionality of his conviction and sentence entered in the Eleventh Judicial Circuit, Miami-Dade County, Case No. 2007-CF-42264. [ECF No. 1]. He was found guilty of Second-Degree Murder and Burglary with an Assault, after a jury trial, and was sentenced to fifty-seven years and six months of imprisonment for both counts, to be served concurrently. [ECF No. 1 at 1, ECF 8-1 at 17, 21–22]. The petition has been referred to the Undersigned by the Honorable Cecilia M. Altonaga for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), (C) and the Rules Governing Habeas Corpus Petitions in the United States District Courts. [ECF No. 20].

After reviewing the pleadings, for the reasons stated in this Report, the Undersigned recommends that the Petition be **DENIED**.

**I.      Factual and Procedural History**

A.  <u>Trial Court Proceedings</u>

On November 26, 2007, Sean Taylor, a professional football player, was murdered in his home during a burglary. Petitioner was charged with First-Degree Murder and Armed Burglary with an Assault or Battery Therein While Armed with a Firearm in connection with the offense. [ECF No. 7 at 2; ECF No. 8-1 at 14–15]. Petitioner moved to suppress statements he made to law enforcement about the offenses and the trial court conducted a hearing. [ECF No. 13-1 at 2–46]. The motion was denied. [ECF No. 8-4 at 2]. Petitioner filed two more motions to suppress. [ECF Nos. 8-4 at 16; 8-4 at 117; 8-4 at 135]. Ultimately, Petitioner's motions to suppress were denied. [ECF No. 8-4 at 163, 117, 135].

Following a trial, a jury found him guilty of Second-Degree Murder as a lesser included offense and found that he was not in possession of a firearm during the commission of that offense, in violation of Florida Statute § 782.04(2), and further found him guilty of Burglary of a Dwelling with an Assault or Battery while armed, in violation of Florida Statutes §§ 810.02(2)(A), 775.0845, 775.087, and 777.011. [ECF No. 1 at 1; ECF No. 8-1 at 17].

Petitioner appealed his conviction and sentence, and on May 17, 2017, the Third District Court of Appeals ("Third District") affirmed the trial court's judgment and sentence in a *per curiam* opinion. *Rivera v. State*, 226 So. 3d 838 (Fla. 3d DCA 2017), *see also* [ECF No. 8-1 at 144]. Petitioner then filed a Motion for Rehearing, which was denied on June 15, 2017, and the mandate issued on July 6, 2017. [ECF No. 1 at 2].

In state court, Petitioner sought to correct his sentence [ECF No. 1 at 3]. The post-conviction court denied his motion to reduce his sentence but ordered the original sentence be amended to reflect Petitioner's entitlement to judicial review after 15 years. [ECF No. 8-1 at 197]. He also sought unsuccessfully to vacate his sentence under Florida Rule of Criminal Procedure 3.850 [ECF No. 1 at 4, ECF No. 7 at 22, ECF 8-1 at 202; ECF No. 8-3 at 2], and to reduce his

sentence under to Rule 3.800(c). [ECF No. 8-1 at 152–56; ECF No. 8-3 at 84, 122]. On appeal, the to the Third DCA the trial court rulings were affirmed. [ECF No. 8-3 at 72, 80, 182].

B. <u>Instant Petition</u>

Petitioner timely filed this petition under 28 U.S.C § 2254 raising the following three claims of ineffective assistance of counsel:

> **Claim 1**: Petitioner's Fourth, Fifth, Sixth, and Fourteenth Amendment Constitutional rights were violated when illegally taken incriminating statements were used against Petitioner at trial, which should have been suppressed by the State court or alternatively through effective counsel, causing substantial prejudice to Petitioner.

> **Claim 2**: Counsel was ineffective for failing to file a motion for judgment of acquittal for the second-degree murder count.

> **Claim 3**: Counsel was ineffective for failing to object to using the principal instruction during Petitioner's trial when no evidence was presented to support such instruction.

*See generally* [*Id.*]. Respondent filed a response, and Petitioner filed a reply. [ECF Nos. 7, 17-1].

## II. Statute of Limitations and Exhaustion

The parties agree that the petition was filed timely, and the court's review shows timeliness. [ECF No. 1 at 17; ECF No. 7 at 25–28]. A federal district court should not entertain any claims unless the petitioner has first exhausted his state court remedies available for challenging his conviction. *Castille v. Peoples*, 489 U.S. 346, 349 (1989). Respondent correctly concedes that

Petitioner exhausted his state court remedies by first raising claims 1 and 2 in the Florida trial court. [ECF No. 7 at 30]. Regarding claim 3, Petitioner and Respondent agree that the claim is unexhausted; however, they disagree on whether this Court can review it. [*Id.* at 33, 60–68; ECF No. 17-1 at 11–14]. The discussion regarding whether this Court can analyze the claim despite Petitioner's failure to exhaust it will be analyzed in the Discussion section of this Report.

### III.   Legal Standard

A.   Standard of Review

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1)'s "contrary to" clause, courts may grant the writ if the state court: (1) reaches a conclusion on a question of law opposite to that reached by the Supreme Court; or (2) decides a case differently than the Supreme Court has on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under its "unreasonable application" clause, courts may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the case. *Id.* at 413. "[C]learly established Federal law" consists of Supreme Court "precedents as of the time the

state court renders its decision." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (citation and emphasis omitted).

An unreasonable application of federal law differs from an incorrect application of federal law. *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation omitted). Under this standard, "a state prisoner must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Courts "apply this same standard when evaluating the reasonableness of a state court's decision under § 2254(d)(2)." *Landers v. Warden*, 776 F.3d 1288, 1294 (11th Cir. 2015) (citations omitted). That is, "[a] state court's . . . determination of the facts is unreasonable only if no fairminded jurist could agree with the state court's determination . . .." *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) (citations and internal quotation marks omitted).

Under § 2254(d), where the decision of the last state court to decide a prisoner's federal claim contains no reasoning, federal courts must "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "It should then presume that the unexplained decision adopted the same reasoning." *Id.*

B.  <u>Ineffective Assistance of Counsel Principles</u>

To establish a claim of ineffective assistance of counsel, the petitioner must show that the counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficiency, he must show that counsel's performance "fell below an objective standard of reasonableness" as measured by

prevailing professional norms. *Id.* at 688. To prove prejudice, he must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

It is "all the more difficult" to prevail on a *Strickland* claim under § 2254(d). *Harrington*, 562 U.S. at 105. As the standards that *Strickland* and § 2254(d) create are both "highly deferential," review is "doubly" so when the two apply in tandem. *Id.* (citation omitted). Thus, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable." *Id.* Rather, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Petitioner has the burden of proof on his ineffectiveness claim, *Holsey*, 694 F.3d at 1256, as well as the burden of proof under § 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citation omitted).

## IV.   Discussion

### A.   Claim 1

First, Petitioner alleges his Fourth, Fifth, Sixth, and Fourteenth Amendment rights were violated when illegally taken incriminating statements were not suppressed and used against him at trial. [ECF No. 1 at 5]. He alleges both trial court error in the ruling and ineffective assistance of counsel in pressing the claim. [ECF No. 17-1 at 4] He contends that law enforcement "[e]ven from the beginning of the interaction with the Petitioner – i.e., the *Terry* stop – put the Petitioner in a position where he could not leave. That initial illegal stop was used to exploit every action that took place thereafter – ultimately resulting in the confession." [*Id.* at 7].

With respect to the Fourth and Fourteenth Amendment claims, Respondent contends the claims are barred because Petitioner had a "full and fair opportunity to litigate" them in the state courts. [ECF No. 7 at 33]. The Supreme Court in *Stone v. Powell*, 428 U.S. 465, 494 (1976), held that habeas corpus relief cannot be granted on the grounds that evidence obtained in an illegal search or seizure was introduced at trial where the litigant had a full and fair opportunity to litigate the claim in state court. Alternatively, Respondent argues Petitioner's Fourth and Fourteenth Amendment rights were not violated because the trial court found, based upon the law enforcement officers' testimony, that Petitioner had voluntarily accompanied officers to the Florida Department of Law Enforcement ("FDLE") station and, in any event, the officers had reasonable suspicion to conduct an investigatory stop in accordance with *Terry v. Ohio*, 392 U.S. 1 (1968), because they had received tips implicating Petitioner and had corroborated them. [ECF No. 7 at 33-49].

Regarding Petitioner's Fifth Amendment claim, Respondent states that Petitioner is not entitled to habeas relief because "Petitioner read his constitutional rights before he made any statements, he stated that he understood his rights and signed the waiver." [*Id.* at 51]. Lastly, Respondent argues the claim must fail because "Petitioner did not invoke his right to counsel during his interview at the [Florida Department of Law Enforcement [and] Petitioner's *Miranda*[1] waiver was knowing and voluntary. As such, he waived his Sixth Amendment right to counsel and has no independent claim on those grounds." [*Id.* at 52] (internal citations omitted).

Petitioner raised these claims in his Rule 3.850 motion. [ECF No. 8-1 at 233–34]. The trial court rejected them for the reasons stated in the State's response to Petitioner's Rule 3.850 motion [ECF No. 8-3 at 2]. The State's response, adopted by the trial court, concludes Petitioner's claim 1 must fail because it was procedurally barred since the constitutionality of the stop and statements

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

were raised in multiple motions to suppress and argued in an evidentiary hearing. [ECF No. 8-2 at 8]. Moreover, the State concluded the claim was meritless because the officers had the necessary reasonable suspicion to stop the vehicle and Petitioner went with the officers voluntarily. [*Id.* at 9–10]. Lastly, the State noted "reframing the issue as incompetency of counsel does not remove the procedural bar. And trial counsel was not deficient because an attorney cannot be incompetent for failing to succeed in a motion to suppress a stop that is based upon lawfully sufficient reasonable suspicion." [*Id.* at 10–11]. The Third DCA affirmed without comment. [ECF No. 8-3 at 72].

After carefully reviewing the record, the Undersigned finds Petitioner has not established that the trial court's determination of the facts was unreasonable or that the trial court's decision was contrary to the law. Nor has he established that his attorney was unconstitutionally ineffective. The Court analyzes each alleged constitutional violation in turn:

A. Fourth and Fourteenth Amendment

First, Petitioner's claims of trial court error are procedurally barred. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Schulze v. Sec'y, Dep't of Corr.*, No. 8:21-cv-73-CEH-JSS, 2023 U.S. Dist. LEXIS 223344, at *2 (M.D. Fla. Dec. 15, 2023) (quoting *Stone v. Powell*, 428 U.S. 465, 494 (1976)). Thus, to obtain federal habeas review based on a Fourth Amendment violation claim, "a petitioner must demonstrate that he 'was denied an opportunity for a full and fair litigation of that claim at trial and on direct review.'" *Id.* at *3 (quoting *Stone*, 428 U.S. at 494, n.37). "A full and fair consideration means any factual disputes must be considered by the fact-finding court and meaningful appellate review must be available."

*Jones v. Inch*, No. 18-14496-CV-ROSENBERG, 2020 U.S. Dist. LEXIS 74766, at *6 (S.D. Fla. Apr. 27, 2020) (citing *Tukes v. Dugger*, 911 F.2d 508, 513-14 (11th Cir. 1990)).

The record shows the state courts fully and fairly considered Petitioner's Fourth Amendment claim. The trial court held an evidentiary hearing on his motion to suppress and issued a written decision in which the court resolved the disputed facts. [ECF No. 8-4 at 163]. Next, the parties fully briefed this claim before the Third DCA, which denied it on the merits. [ECF No. 8-1 at 63–66, 96–112, 141]. Petitioner then filed two more motions to suppress, one with his initial attorney and another with new defense counsel. [ECF No. 8-4 at 117, 135]. Both were reviewed and denied as well. [*Id.*]. Hence, *Stone* bars this claim. *See Washington v. Crews*, No. 18-10670-J, 2018 U.S. App. LEXIS 20245, at *3–4 (11th Cir. July 19, 2018) (holding that petitioner's Fourth Amendment claim was barred because the state trial court held an evidentiary hearing on the claims, "and the state appellate court considered the undisputed facts obtained at the evidentiary hearing. Therefore, [petitioner] was accorded a full and fair litigation of his Fourth Amendment claim in state court and is not entitled to federal habeas corpus relief.").

Moreover, this claim would fail even if *Stone* did not bar it. The trial court found that Petitioner's initial stop was a valid investigatory stop and that Petitioner "willingly and voluntarily accompanied law enforcement to the FDLE offices in Naples for an interview and to speak with Miami-Dade Homicide Detectives," and Petitioner has not meaningfully shown otherwise. *See* [ECF No. 8-4 at 163]. The trial court further found Petitioner had "voluntarily, intelligently and knowingly waived his *Miranda* Rights and provided a statement to law enforcement." [*Id.*].

At the evidentiary hearing, FDLE Special Agent Grant Wagner testified that he was tasked with surveillance of Petitioner's family's home. [*Id.* at 168]. He was told that Petitioner was a suspect in Sean Taylor's murder. [*Id.* at 172]. When he saw Petitioner leave his house in a van

along with three other young men, he alerted Special Agent Walsh. [*Id.* at 168]. Agent Walsh and Sergeant Gonzalez used their police lights to pull over the van. [*Id.* at 173]. Sergeant Gonzalez testified that he had attended a Miami-Dade County police meeting regarding the investigation during which he and Agent Walsh were asked to pull over the vehicle in which Petitioner was riding and ask Petitioner and the occupants "if they would come back and make the statements." [*Id.* at 174]; *see also* [*id.* at 184] ("[O]ne of the tail lens was cracked so that's what the probable cause was for the traffic stop."). After stopping the van, Sergeant Gonzalez approached the van, asked the driver for his driver's license, and confirmed that he had stopped the correct individuals. [*Id.*]. Petitioner, who was 17 years and eight months old at the time, was in the front passenger seat. *See* [*Id.* at 174, ECF No. 1 at 5]. Sergeant Gonzalez had been informed that there was no probable cause for an arrest at that time and that Petitioner should be released if he did not want to give voluntary statements. [ECF No. 8-4 at 175]. (Sergeant Gonzalez testified that Agent Walsh "stated that there were some people that wanted to talk to him, and he asked him if he would go and talk to them.")

Agent Walsh similarly testified that he had been requested to asked Petitioner, Charles Wardlow, and a third suspect in the vehicle if they would come to the FDLE to answer some questions and that, if they refused, they were free to leave. [*Id.* at 190]. Agent Walsh testified the stop involved two marked police vehicles and one unmarked. [*Id.* at 189]; *see also* [*id.* at 170]. Sergeant Gonzalez approached the van to speak to the driver and obtain the driver's identification. [*Id.*] Agent Walsh retreated to the rear of his police vehicle where Sergeant Gonzalez then joined him, and they confirmed that the suspects were in the van. *See* [*id.* at 190].

Next, Sergeant Gonzalez asked Petitioner to step out of the van to speak with Agent Walsh. [*Id.*]. Petitioner walked over to Agent Walsh. [*Id.*]. Agent Walsh testified that he told Petitioner

that "there's some guys that would like to talk to you, would you like to come down to FDLE." [*Id.* at 193]. Petitioner responded, "Sure, no problem." [*Id.*]. Sergeant Gonzalez also asked Wardlow to speak with Agent Walsh, and Agent Walsh testified he made the same request of Wardlow who also consented. [*Id.* at 193–94]. Agent Wagner patted Petitioner down to check for weapons, then Petitioner entered Agent Wagner's vehicle and was driven to the police station. [*Id.*]. The officers testified that, although they were armed, they did not take their guns out of the holsters, no one touched the driver or any of the passengers, nor raised their voices. [*Id.* at 190]. Petitioner did not ask to contact anyone and made no requests of the officers. [*Id.*].

Law enforcement admitted they did not tell Petitioner, or the other young men in the vehicle who were also taken to the police station, why law enforcement wanted to speak to them, nor were they told they were free to leave. [*Id.* at 174, 191].

Detective Segovia, the lead detective on the case, testified that before the decision was made to stop Petitioner, law enforcement investigated two tips implicating Petitioner in the murder. [ECF No. 8-5 at 17, 18-19]. Both tips contained information about the crime not known to the general public, indicating the tipsters knew the people involved, both stated the crime was committed by four males from Ft. Meyers, both implicated Petitioner by name along with others, and the cellphone records of the other males implicated in the crime by the tipsters indicated these individuals were in the vicinity of Taylor's house when he was murdered. *See* [*id.*].

Based on this evidence, the trial court found that the law enforcement had reasonable suspicion that Petitioner had committed a crime at the time he was stopped. [ECF No. 8-4 at 163]. In fact, both federal and Florida law supports the conclusion that corroborated tips can establish probable cause. *Alabama v. White*, 496 U.S. 325, 329–32 (1990); *Pasha v. State*, 225 So. 3d 688,

704 (Fla. 2017). Thus, the trial court concluded, it was a valid investigatory stop based upon reasonable suspicion. *See generally* [ECF No. 8-4 at 163].

After concluding that there was reasonable suspicion to support the stop, the trial court also found that Petitioner had voluntarily agreed to go to FDLE headquarters to speak with the police. [*Id.* at 163]. All the officers testified that Petitioner was not handcuffed or touched and that no officer raised his voice, and all denied that Petitioner requested to call his father or to contact anyone. *See generally* [*id.* at 166–204].

While Petitioner notes in his reply that he was not free to walk away from the officers because the driver of the vehicle was also taken to police headquarters, [ECF No. 17-1 at 4], the court credited the testimony of the officers that Petitioner did not request to contact his parents or anyone else and voluntarily went to FDLE headquarters. *See* [ECF No. 8-4 at 193]. The State also presented evidence that Petitioner had been stopped by police before in August of 2007 when he and another individual were in a truck at a parking lot at 12:30 a.m. [*Id.* at 126–30]; *see also* [*id.* at 34]. After the police officer found two handguns in the truck, Petitioner and his companion were advised of their *Miranda* rights, and both refused to speak with the officer. *See* [*id.* at 130]. The State further presented evidence that Petitioner had been arrested as a juvenile and had told the officer that he did not want to tell his mother that he was being arrested and taken to the police station but, because Petitioner was sixteen years old at the time, the officer contacted Petitioner's mother. [*Id.*].

If the state court applied clearly established federal law to reasonably determined facts in determining the claim on its merits, "a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fair-minded disagreement.'" *Shinn v. Kayer*, 592 U.S. 111, 112 (2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Based

on the testimony presented at the suppression hearing, Petitioner has not established that the state court made an unreasonable determination of the facts in light of the evidence nor that the state trial and appellate courts unreasonably applied the law.

    B.  <u>Fifth Amendment and Sixth Amendment</u>

Petitioner also asserts that his Fifth Amendment right protecting against self-incrimination and his Sixth Amendment right to counsel was violated when he was questioned at the FDLE. He claims that at the FDLE his cellphone was taken away, his requests to call his parents were denied or ignored, he was told his mother was in medical trouble and his family was in danger due to the victim's notoriety, and one of the detectives started throwing chairs around the room and yelling at him when he refused to talk and requested a lawyer. [ECF No. 1 at 8]. In addition, Petitioner testified at his suppression hearing that the first time he asked to call his parents, the detectives told him that he needed to sign the *Miranda* form and that he signed it for that reason, but they still denied him a telephone call to his parents. [ECF No. 13-1 at 193]. The court found the officers' testimony that Petitioner's statements were knowing and voluntary to be "more credible and believable" than Petitioner's and defense witnesses claims that Petitioner was threatened or forced to admit to the offense. [ECF No. 8-4 at 163].

Respondent argues that the trial court properly found that Petitioner's waiver of his *Miranda* rights was voluntary, intelligent, and knowing. [ECF No. 7 at 51]. Petitioner does not make any legal argument in his Reply regarding these claims. *See generally* [ECF No. 17-1]. He contends, however, that *counsel* was ineffective in arguing the motions to suppress. Because it appears he failed to respond to the contention that the trial court's decision was appropriate, this Court can find that Petitioner conceded those claims with respect to trial court error. *See Vasquez v. Fla. Dep't of Corr.*, No. 19-60051-CV-ALTMAN, 2020 U.S. Dist. LEXIS 223822, at *8 (S.D.

Fla. Nov. 30, 2020) (noting that the petitioner waived his claim on exhaustion because it never responded to the respondent's argument that petitioner's claims were unexhausted); *Abramson v. 1 Glob. Cap.*, LLC, No. 15-cv-61373-BLOOM/Valle, 2015 U.S. Dist. LEXIS 181721, at *6 (S.D. Fla. Sep. 21, 2015) (quoting *Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) (Posner, J.)) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. [The Court] will not do his research for him."); *Office of the AG v. Smartbiz Telecom LLC*, No. 1:22-cv-23945-JEM, 2023 U.S. Dist. LEXIS 148989, at *15 (S.D. Fla. Aug. 23, 2023) ("Defendant does not address Plaintiff's arguments in its Reply and as such, this Court deems them abandoned.").

C. <u>Ineffective Assistance of Counsel Under the Sixth Amendment</u>

Next, as noted, Petitioner claims that his Sixth Amendment right was violated because his counsel was ineffective in failing to argue additional points in a motion to suppress. [ECF No. 17-1 at 7]. More specifically, Petitioner contends that trial counsel failed to base the motion to suppress on the fact that the initial traffic stop was unconstitutional pursuant to *United States v. Sharpe*, 470 U.S. 675 (1985), which focuses on the length of the initial detention. [*Id.* at 9]. However, a quick review of the record demonstrates that trial counsel did move to suppress under the authority of *Sharpe* and *Terry v. Ohio*, 392 U.S. 1 (1968) (emphasis added). [ECF No. 8-4 at 135–138]. On a third motion to suppress filed on July 1, 2013, Petitioner's counsel argued in light of *Sharpe*, that even if the initial *Terry* stop was appropriate, the length of time of the investigatory stop exceeded the exceeded *Terry*'s standards.

In fact, the state noted in its written response that the time from which the vehicle was stopped and Petitioner agreed to go to the FDLE was 12 minutes, which was less than the 20-

minute stop approved in *Sharpe*. [ECF No. 8-4 at 158]. And, further argued that by the time Petitioner confessed to the crime, law enforcement had probable cause to arrest him because Jason Mitchell, a co-conspirator who was being interviewed by another officer, had admitted to his involvement in the burglary and told officers that Rivera had shot Taylor. Mitchell had actually been brought by the conference room where Petitioner was interviewed and had pointed to him and confirmed he was the shooter, and Petitioner was informed of Mitchell's statements.

The trial court consistently held, as part of the investigatory stop, the police could ask Petitioner to voluntarily go to the police station and here Petitioner was asked to accompany the officers to the police station and voluntarily agreed to go. [ECF No. 8-4 at 163]. Therefore, Petitioner's argument is meritless.

In sum, the state courts' rejection of claim 1 is not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts. And Petitioner has not established that his counsel was unconstitutionally ineffective in its efforts to suppress his statements to law enforcement.

## B. Claim 2

Second, Petitioner contends that counsel ineffectively failed to move for judgment of acquittal on second-degree murder "after the jury deliberated for three days and ultimately found him guilty of the lesser included offense of Second Degree Murder – specifically finding that he did not possess a firearm." [ECF No. 17-1 at 10; ECF No. 1 at 9–12]. Respondent, however, argues that the claim is procedurally barred because it was raised on direct appeal or that, in the alternative, it is meritless based on the arguments raised by the State's response to Petitioner's Rule 3.850 motion. [ECF No. 7 at 54–55]. Additionally, Respondent argues that "even if counsel was ineffective for failing to file a motion for a judgment of acquittal, Petitioner cannot show

prejudice" because the motion would not have been granted. [*Id.* at 59]. In his Reply, Petitioner

contends that his claim is not procedurally defaulted because:

> As presented in his petition, the Petitioner argued that there was a difference
> <u>between arguing that a trial court erred in granting</u> the State's request to give an
> instruction on second-degree murder (which was what had been raised on direct
> appeal and referenced by State and court) and what was argued by the Petitioner –
> which was that counsel should have filed a post-verdict motion for judgment of
> acquittal. In fact, the only way that the jury's verdict on the Second Degree
> Murder count could have been challenged after it was entered was by filing a post-verdict
> motion, which counsel failed to do. That issue had never ben [sic] raised by counsel
> at the trial court level, or to the appellate courts, and the lower court's finding
> otherwise was a decision made off of findings that were not supported by the facts
> within the record and ultimately, resulted in a finding contrary to *Strickland*.

[ECF No. 17-1 at 10–11].

Petitioner raised this claim in his Rule 3.850 motion. [ECF No. 8-1 at 233–34]. The trial

court rejected it for the reasons stated in the State's response to Petitioner's Rule 3.850 motion

[ECF No. 8-3 at 2]. The State's response incorporated into the trial court order stated that ground

2 failed because it was procedurally barred since, even though phrased differently, it was raised

on direct appeal. [ECF No. 8-2 at 11]. The State argued, nonetheless, that the claim was also

substantively meritless because:

> Rivera was charged, as a principal, with the commission of armed burglary and
> first-degree felony murder. The indictment charged that Rivera and the co-defendants
> "while engaged in the perpetration of, or in an attempt to perpetuate any
> burglary, and during the course of committing the felony did an act imminently
> dangerous to another and evincing a depraved mind regardless of human life, by
> shooting Sean Maurice Taylor". ..." Thus, the indictment contained the elements of
> second-degree murder to allow the jury to be instructed on this crime as a
> permissive lesser included offense. *Coicou v. State*, 39 So. 3d 237, 243 (Fla. 2010).
> Furthermore, the evidence was sufficient for the jury to be instructed on and Rivera
> to be convicted of second-degree murder. The evidence proved that the assailants
> in this case travelled [sic] two hours to burglarize a residence, at night, and brought
> with them a loaded firearm that they were ready to use. They forcibly entered a rear
> door of the residence at around 1:40 A.M, after seeing three cars parked outside
> that indicated someone was at home, including the very car the tipster stated should
> provide concern. Once inside the residence, they learned the master bedroom door
> was locked. The locked master bedroom was the final inner sanctum in which

innocent homeowners might take refuge. Then, while armed with a firearm, they kicked the master bedroom door down and immediately shot the victim who was inside with his girlfriend and eighteen-month-old daughter.

The evidence which the jury was given to consider included Rivera's confession. Rivera disputed the veracity of the confession at trial but admitted that during his testimony in the hearing on the motion to suppress he said the confession was true. In the confession, Rivera stated that he agreed to participate in the burglary of Taylor's home and that he procured a firearm before leaving Ft. Myers to travel to Miami to commit the armed burglary. Rivera stated that he had the gun in his right hand while he was inside Taylor's house. He kicked the door to Taylor's bedroom, who came running out of the bedroom with something in his hand, and he deliberately fired his gun at Taylor.

During his trial testimony, Rivera claimed he just waited outside in the getaway car while his friends committed the burglary-murder. The jury obviously rejected this mere presence testimony. Nevertheless, there was a jury pardon in this case that resulted in a conviction for armed burglary and second-degree murder, but spared Rivera a conviction for first degree felony murder or a handgun minimum mandatory. However, that does not diminish the fact that evidence was presented to the jury that proved Rivera was one of the armed assailants who travelled [sic] all the way from Ft. Myers; saw three cars parked outside the residence; and immediately shot Sean Taylor after breaking through the rear door at 1:40 A.M. and kicking in his locked master bedroom door. A shooting under such circumstances is an act that is imminently dangerous to another and evincing a depraved mind regardless of human life. And Rivera was charged as a principal in this case. *See Staten v. State*, 519 So. 2d 622 (Fla. 1988) (defendant who claimed he simply waited in a getaway car and then drove away was properly convicted as principal in second degree murder, armed robbery, and related counts).

[*Id.* at 11–12]. The Third District affirmed without comment. [ECF No. 8-3 at 72].

First, in this instance, the Court finds that the claim is not procedurally barred because the issue Petitioner raised on direct appeal was whether the trial court abused its discretion by granting, over Petitioner's objection, the State's request for a category two lesser instruction on second-degree murder; the issue had nothing to do with ineffective assistance of counsel. [ECF No. 8-1 at 73–75]. Thus, this Court will analyze the merits of Petitioner's second claim.

Under Florida law, "a motion for judgment of acquittal will be granted '[i]f, at the close of the evidence for the state or at the close of all the evidence in the case, the court is of the opinion that the evidence is insufficient to warrant a conviction.'" *Laurent v. Jones*, No. 17-14180-CIV-

ROSENBERG/MAYNARD, 2018 U.S. Dist. LEXIS 81715, at *26 (S.D. Fla. May 12, 2018) (quoting Fla. R. Crim. P. 3.380(a)). "If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction." *Moreno-Gonzalez v. Florida*, No. 20-21904-CV, 2023 U.S. Dist. LEXIS 167373, at *23 (S.D. Fla. Sep. 20, 2023) (citing *Holloman v. State*, 211 So. 3d 150, 151 (Fla. 4th DCA 2017) quoting *Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002)). But if "the prosecution's evidence is wholly circumstantial, there must be sufficient evidence establishing each element of the offense, and the evidence must also exclude the defendant's reasonable hypothesis of innocence." *Id.*

Here, the trial court reasonably rejected this claim. As Respondent identifies and as the State argued it in the lower court, the jury was presented with evidence that proved Petitioner was one of the armed assailants who traveled from Ft. Myers to Miami, broke into the victim's home, and shot him. For example, during the trial, Petitioner admitted that the contents of his confession—in which he admitted he shot the victim—to the FDLE were not completely true, despite saying otherwise in a previous hearing, and testified that he did not shoot the victim but was merely outside waiting for the rest of the co-defendants to finalize the robbery. [ECF No. 12-1 at 571–76, 641–644]. The jury was instructed that to find Petitioner guilty of second-degree murder, the State had to prove that the victim was dead, that Petitioner caused the death, and that there was an unlawful killing of the victim by an act immediately dangerous to another, which demonstrates a depraved mind without regard for human life. [ECF No. 8-5 at 149].

Regardless of the version of Petitioner's testimony that the jury decided to believe, by Petitioner's admission, he drove in a car for two hours with the plan to burglarize an occupied home with a gun, and at no point did he think of leaving or calling the police; thus, a reasonable

jury could have concluded that the evidence supported a conviction of second-degree murder. Therefore, moving for a judgment of acquittal would have been futile. *See Moreno-Gonzalez*, 2023 U.S. Dist. LEXIS 167373, at \*24–25 ("Given the evidence adduced at trial, the prosecution presented evidence that, if believed by the jury, was sufficient to establish all the elements of the charges. Therefore, Petitioner has not shown that a better or more comprehensive argument for judgment of acquittal would have had a chance for success.").

In addition, *Strickland* prejudice cannot be established since counsel filed a motion for new trial—which the trial court denied—on the grounds that the jury was improperly instructed on the lesser charge of Second-Degree Murder because the evidence did not support the instruction. [ECF No. 185–86]. Therefore, even if counsel was ineffective, the claim fails because the *Strickland* prejudice prong is not satisfied since moving for a judgment of acquittal would have been pointless.

C.   Claim 3

Lastly, Petitioner alleges that counsel was ineffective for failing to object to the use of the principal instruction during the trial when no evidence was presented to support the instruction. [ECF No. 1 at 13]. Petitioner concedes that the claim is unexhausted but that this Court should still hear it on the merits pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012). [*Id.* at 14].

On the other hand, Respondent agrees that the claim is unexhausted, but it further states that the claim "is also procedural[ly] defaulted because any further attempts at exhaustion would be futile. Under Florida Rule of Criminal Appeal 3.850 any further Rule 3.850 motion would be denied as untimely and successive." [ECF No. 7 at 31]. In sum, it is Respondent's position that Petitioner defaulted the claim because it was not raised in Petitioner's initial Rule 3.850 motion, "and for that matter, did not raise it in any of his state post-conviction proceedings. As applied here, Petitioner has not demonstrated that he is entitled to circumvent the procedural default of the

unexhausted claims." [*Id.* at 33] (internal citations omitted). In the Reply, Petitioner states this Court can hear the claim because "the claim has 'some merit' and the other factors required under *Martinez* are easily met." [ECF No. 17 at 11]. Additionally, the Petitioner argues "that counsel was constitutionally deficient for failing to object to the use of the principal jury instruction during his trial, when there was absolutely no evidence offered to support that instruction – making it erroneously given." [*Id.*]

Respondent correctly identifies that the claim as procedurally barred. "Where an unexhausted claim would be subject to a state procedural bar if Petitioner returned to the state courts, the district court may treat the claim as procedurally defaulted for purposes of federal habeas corpus relief, even absent a state court determination to that effect, if any future attempts at exhaustion would be futile under state law." *Johnson v. Dixon*, No. 21-23252-CV, 2024 U.S. Dist. LEXIS 14293, at *11–12 (S.D. Fla. Jan. 26, 2024) (citations omitted). Here, the claim is procedurally defaulted from review because Petitioner can no longer return to the state court to properly exhaust the claims in a successive Rule 3.850 Motion.

However, the United States Supreme Court has recognized a narrow exception to the procedural bar. Under *Martinez v. Ryan*:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

566 U.S. at 14. "Although *Martinez* did not specify what makes a claim 'substantial,' the Eleventh Circuit has applied the same standard used for issuing a certificate of appealability—i.e., a 'substantial showing of the denial of a constitutional right.'" *Weingrad v. Dixon*, No. 22-14402-CIV-CAN, 2023 U.S. Dist. LEXIS 180933, at *12 (S.D. Fla. Sep. 30, 2023) (citations omitted). Thus, to satisfy the substantial showing prong, Petitioner "must show that reasonable jurists would debate both (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the district court was correct in its procedural ruling." *Rodriguez v. Sec'y, Dep't of Corr.*, No. 23-11338, 2023 U.S. App. LEXIS 25383, at *1 (11th Cir. Sep. 25, 2023) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "In evaluating whether a petitioner's ineffective assistance claim is substantial, courts are to consider the fact-pleading requirement for § 2254 petitions, and the standard from *Strickland*." *Weingrad*, 2023 U.S. Dist. LEXIS 180933, at *17 (internal quotations omitted).

The Court applies this standard to Petitioner's claim and finds the claim lacks merit under the two-prong test articulated in *Strickland*. Petitioner argues that "the evidence presented did not support the principal instruction and counsel had a constitutional obligation to object to said instruction as a result." [ECF No. 17-1 at 12]. However, as Respondent correctly identifies, ample evidence presented to the jury warranted the principal instruction. [ECF No. 7 at 65-69].

The principal instruction stated as follows:

If the defendant helped another person or persons commit or attempt to commit a crime, the defendant is a principal and must be treated as if he had done all the things the other person or persons did if

1. the defendant had a conscious intent that the criminal act be done and
2. the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist or advise the other person or persons to actually commit or attempt to commit the crime.

> To be a principal, the defendant does not have to be present when the crime is committed or attempted. Mere presence at the scene of a crime in and of itself does not establish defendant as a principal.

[ECF 8-5 at 162]. The Florida Supreme Court has stated that "a person who is charged in an indictment or information with commission of a crime may be convicted on proof that she aided or abetted in the commission of such crime." *State v. Larzelere*, 979 So. 2d 195, 215 (Fla. 2008) (citations omitted). Additionally, "if an information charges a defendant with a substantive crime, . . . and the proof establishes only that he was feloniously present, aiding, and abetting in the commission of the crime, a verdict of guilty as charged should be sustained." *Watkins v. State*, 826 So.2d 471, 474 (Fla. 1st DCA 2002) (citations omitted). Therefore, "pursuant to Florida law, if evidence exists to support the principal theory, the trial court may instruct the jury on the principal theory." *Dombrowski v. Florida*, No. 16-14337-Civ-ROSENBERG, 2017 U.S. Dist. LEXIS 205880, at *49 (S.D. Fla. Dec. 12, 2017).

As discussed under claim 2, the jury heard from Petitioner himself that he had testified at a suppression hearing that his statement to law enforcement in which he recounted how he burglarized the victim's home and shot him was true. [ECF No. 12-1 at 571–76, 641–644]. The jury also heard from Petitioner how he and his co-defendants drove for two hours while planning to commit a robbery with a firearm. [*Id*]. Even though at trial, Petitioner gave a version where his involvement in the crime was minimal, he did testify that he waited in the car while he knew that the robbery was ongoing without calling for help. [*Id*]. Therefore, as Respondent correctly identifies:

> Reasonable competent counsel could have decided against objecting to the principal instruction because the evidence, including Petitioner's testimony, that Petitioner and his co-defendants travelled [sic] two hours to burglarize a residence, at night, and brought with them a loaded firearm that they were ready to use. An objection to the instruction would not have been well taken as there was no plausible basis for an objection based on the evidence presented at trial.

[ECF No. 7 at 67]. Thus, because trial counsel performance was neither deficient nor prejudicial, Petitioner has failed to make a "substantial" showing on the merits warranting application of the *Martinez* exception. *Martinez*, 566 U.S. at 14. Accordingly, the Court finds that Petitioner's failure to exhaust claim 3 cannot be excused and thus dismisses it as procedurally defaulted.

### 2.  Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the Petitioner to establish the need for a federal evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). To determine whether an evidentiary hearing is needed, the question is whether the alleged facts, when taken as true, are not refuted by the record and may entitle a petitioner to relief. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318-19 (11th Cir. 2016), *cert. den'd*, 137 S. Ct. 2245 (2017). The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [petitioner's] claim[s] without further factual development," *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing is not warranted here.

### 3.  Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a COA only if the petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on

procedural grounds, the Petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Upon consideration of the record, this court should deny a COA. Notwithstanding, if Petitioner disagrees, he may bring this argument to the attention of the District Judge in objections.

### 4.  Conclusion

Based upon the foregoing, it is recommended that the petition for habeas corpus [ECF No. 1] be **DENIED**, no Certificate of Appealability issue, final judgment entered, and the case closed.

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Judge within **FOURTEEN DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**SIGNED** this 20th day of May, 2024.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:   **U.S. District Chief Judge Cecilia M. Altonaga**; **and**

**All Counsel of Record**

24